**Even THOMAS, Plaintiff,**

v.

**BEAUMONT INDEPENDENT SCHOOL DISTRICT, Defendant.**

**CIVIL ACTION NO. 1:13-CV-572**

United States District Court,
E.D. Texas, Beaumont Division.

Signed January 12, 2015

Even Thomas, III, Beaumont, TX, pro se.

James E. Byrom, Walsh, Anderson, Brown, Gallegos & Green, PC, Houston, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT

KEITH F. GIBLIN, UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(c), the Local Rules for the United States District Court for the Eastern District of Texas, the consent of the parties, and order of the District Court, this case is before the undersigned United States Magistrate for consideration of all matters and proceedings, including trial and entry of judgment. Pending before the Court is the defendant Beaumont Independent School District's Motion to Dismiss Under FRCP 12(c), and Alternatively Motion for Summary Judgment or Motion to Continue (doc. # 43).

## I. Background

### A. Plaintiff's Claims

On September 13, 2013, the plaintiff, Even Thomas, ("plaintiff" or "Thomas"), proceeding *pro se*,[1] filed suit against the defendant, Beaumont Independent School District ("BISD" or "defendant"). The plaintiff amended his pleading on April 24, 2014. This pleading amended' (doc. # 38) is the live pleading now before the Court, which the undersigned will refer to as the amended complaint. A liberal reading of this pleading[2] shows that the plaintiff is asserting causes of action for (1) violations of his Weingarten rights, (2) violations of his rights against search and seizure under the Fourth Amendment; (3) violations of his Fifth and Fourteenth Amendment due process rights, (4) discrimination, retaliation and hostile work environment in violation of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, *et seq.*; and (5) violations of his First Amendment rights. *See Amended Complaint* (doc. # 38), at pp. 1–2.

### B. Defendant's Motion

The defendants seeks dismissal or judgment in its favor based on several grounds. First, BISD contends that the plaintiff's claims are barred by *res judicata* to the extent they are based on the same causes of action already adjudicated in Mr. Thomas' previous lawsuit, *Thomas v. Norris*, 1:07–CV–573, which was also filed here in the Eastern District of Texas. Alternatively, BISD contends that any of Thomas' claims based on events more than two years prior to filing the instant suit should be barred by limitations. BISD next contends that the plaintiff failed to exhaust his administrative remedies with the EEOC. Specifically, defendant avers that Mr. Thomas' claims far exceed the scope of the underlying EEOC charge and, accordingly, all of his claims except for the Title VII retaliation claim should be dismissed for lack of jurisdiction. The defendant relatedly argues that Thomas has also failed to exhaust his administrative remedies.

---

1. The plaintiff also requested leave to proceed *in forma pauperis*. After review of his financial information, the Court denied that request. *See Order* (doc. # 5). The plaintiff timely paid the filing fee after receipt of the Court's order directing him to do so.

2. A plaintiff who brings a claim *pro se* is entitled to a liberal reading of his complaint. *Payton v. United States*, 550 Fed.Appx. 194, 195 (5th Cir.2013) (per curiam) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Id.* Quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Nevertheless, the liberal *pro se* pleading standard still demands compliance with procedural standards. *See, e.g., Douglass v. United Services Auto. Ass'n.*, 65 F.3d 452, 455 n. 4 (5th Cir. 1995).

Next, BISD argues that the Weingarten claims should be dismissed because Thomas is a public sector state employee who does not have a right to union representation. BISD further contends that the Fourth Amendment "search and seizure" claims fails because plaintiff s complaint does not articulate which constitutional right he alleges was infringed with enough specificity and because he fails to allege facts sufficient to sustain municipal liability under the Fourth Amendment. Relatedly, defendant argues that the due process claims fail because the plaintiff does not articulate the proper vehicle for vindicating these rights.

As for the Title VII and ADA claims, BISD argues that plaintiff has failed to state a claim because he has not specified a disability (under the ADA), he has not suffered an adverse employment action, and he has not established a causal nexus even if he had shown an adverse employment action. Defendant next contends that the plaintiff's hostile work environment allegations also fail because he has not pled a connection between any alleged harassing conduct by BISD and a protected characteristic. BISD also avers that Thomas's retaliation claim must fail because his claims are untimely if based on the 2007 lawsuit and because the claims exceed the scope of the most recent 2013 EEOC charge. Furthermore, BISD points to evidence showing that it did not have knowledge of the instant suit and therefore could not have taken action against Thomas based on the instant claims. BISD also argues that any actions related to Thomas were based on legitimate business decisions.

Finally, BISD argues that Thomas has failed to properly plead a violation of his First Amendment rights. Moreover, it contends that the evidence shows that plaintiff had ample opportunity to voice his concerns about his employment situation and file the necessary grievances and that Thomas cannot establish a cause of action because his claims arise from areas of personal—rather than public—concern.

C. Plaintiff's Responses and Corresponding Briefs

Plaintiff submitted a "motion to deniel [sic]" the defendant's motion to dismiss on July 2, 2014 (doc. # 45), which the Court construes as Thomas' response in opposition to the defendant's motion to dismiss and for summary judgment. In this document, Mr. Thomas "objects" to BISD's motion by generally arguing that the evidence submitted by BISD in support of the motion was not properly disclosed during the discovery process. Thomas relatedly contends that the defendant and its witnesses are not credible. He also substantively argues that there are genuine material facts upon which a jury could return a verdict in his favor. He then submits approximately 10 pages in which he restates his version of the law under the ADA and Title VII and then presents his subjective version of the facts at issue. *See Response* (doc. # 45), at pp. 5–14. As exhibits, he attaches two emails exchanged between himself and BISD employee Wayne Wells. He also attaches what appears to be correspondence issued by BISD to all parents in the District on June 2, 2014, addressing a reduction in force and budget issues. None of the evidence attached to Mr. Thomas' response is sworn or verified.

Defendant BISD filed its reply to Thomas' response (doc. # 46) in which it argues that plaintiff has failed to provide any admissible evidence raising a fact question in response to the District's motion to dismiss. BISD contends that the plaintiff "relies solely on unsupported allegations and his subjective beliefs regarding the actions and motives of Beaumont ISD."

*See BISD Reply* (doc. # 46), at p. 2. Defendant goes on by responding to Thomas' allegations regarding discovery and states that the affidavits submitted in support of its motion were properly presented as part of summary judgment practice under Federal Rule of Civil Procedure 56. *Id.* Finally, BISD contends that even if the allegations submitted by plaintiff in his response are correct, they are insufficient to create a fact issue on any essential element of his prima facie Title VII and ADA claims. *Id.* at pp. 5–7.

Plaintiff then filed his reply (doc. # 50), which the defendant moved to strike (doc. # 51). Defendant moved to strike the reply to the extent that it could be construed as a response to defendant's related motion for leave (doc. # 47) to supplement the appendix to its motion for summary judgment to correct a draft affidavit which was inadvertently attached to the motion for summary judgment. Plaintiff's reply (doc. # 50) focuses on arguments regarding the hostile work environment claim. The defendant also submitted a sur-reply (doc. # 51) along with its motion to strike in which BISD argues that plaintiff has failed to rebut the arguments in defendant's motion to dismiss and for summary judgment. BISD again argues that the plaintiff's allegations are based solely on his subjective beliefs and that the evidence establishes that BISD's decisions regarding Thomas' employment were made in the best interests of the students, the District, and for legitimate business purposes. *See Sur-Reply* (doc. # 51), at p.4.

As the defendant points out in its reply, the plaintiff has offered no sworn, verified evidence which controverts the defendant's evidence or supports his claims of discrimination. However, because the Court is required to look at the record as a whole before granting summary judgment and because the plaintiff is *pro se*, for the sake of completeness the Court takes the all of the information provided and the plaintiffs allegations into account.

D. Background Facts and Summary Judgment Evidence

The undisputed background facts presented by the defendant's motion and attached evidentiary exhibits—incorporated herein by the Court—establish the underlying course of events. Thomas began his employment with BISD in 1993. *See Affidavit of Timothy Chargois, former Superintendent of BISD, Exhibit A to Motion for Summary Judgment* (doc. # 43–1). Thomas has worked as a substitute teacher and an elementary school teacher from 1993 to 1999, when he became certified to be an assistant principal. He then served an assistant principal from 1999–2007. *Id.* His administration certificate expired on January 25, 2007, and he was unable to renew it. Accordingly, at that time he was moved back into an elementary teaching position. *Id.* Most recently, he was assigned to a 2nd grade teaching position for the 2012–2013 and 2013–2014 school years. *Id.* The record shows that BISD proposed a nonrenewal of Thomas' teaching contract for the 2014–2015 school year. *See March 25, 2014, BISD Correspondence, Attached to Plaintiffs Amended Complaint* (doc. # 38).

The defendant's motion focuses on the 2012–2013 and 2013–2014 school years. *See Motion,* at pp. 7–18. A review of plaintiff s Amended Complaint and his responsive briefs also show that his claims focus on this time period. *See Amended Complaint* (doc. # 38) and *Plaintiff's Response/SurReply* (doc. # 50).

During the 2012–2013 school year, Thomas was assigned as a 2nd grade teacher at CharltonPollard Elementary. *See Chargois Affidavit,* at p. 2. He was absent all of the fall semester and much of the spring semester during that school year.

*See Affidavit of Wayne Wells, Principal of Charlton-Pollard Elementary, Attachment to Defendant's Motion for Leave to Supplement its Appendix to the Motion for Summary Judgment* (doc. # 47–1), at p. 2. After Thomas did return to work, Principal Wells began to receive complaints from the parents about Thomas. *Id.; see also Exhibit A–4 to Motion for Summary Judgment—Correspondence from Parents and Documentation Regarding Thomas' Performance.* This included unprofessional comments to parents and unresponsiveness to parents' concerns. *See id.* Thomas also did not avail himself of training opportunities and Principal Wells continued to receive complaints. *See Wells Affidavit,* at pp. 2–3. Principal Wells was unable to follow up with Thomas on these issues because Thomas took leave from April 20, 2013, until May 20, 2013. *Id.* at p. 3.

The 2013–2014 school year began and Principal Wells was hopeful that "Thomas would do well with a fresh start in the school year." *Id.* However, only a few weeks into the school year, he began to receive complaints from parents about Thomas. *Id. See also Exhibit A–4 to Motion for Summary Judgment,* at pp. 120, 122. Concerned about Thomas' use of instructional time, Principal Wells arranged for Thomas to receive support from a BISD curriculum expert. *See Wells Affidavit,* at p. 3; *see also Exhibit A–4,* at pp. 115–116. On August 29, 2013, Curriculum Coordinator Cheryl Triplett observed Thomas' classroom in order to provide assistance and coordinate professional development opportunities. *See id.* Thomas was resistant to Tripplett's help. *Id.* He responded to her efforts to show him how to post the required objectives for the classroom by exclaiming "I can't take this!" and walking off campus without reporting to the office or arranging for a substitute and thus leaving a classroom of second grade students unattended. *See*

*id.* Other Charlton Pollard staff were forced to cover his classroom until a substitute could be located. *Id.*

The next morning, August 30, 2013, Principal Wells met with Thomas regarding his failure to follow procedures and abandoning his classroom. *See Wells Affidavit,* at p. 4. In its motion, BISD points out that Thomas had previously attended a teacher in-service prior to the beginning of the 2013–2014 school year during which he was provided training materials regarding the BISD and Charlton–Pollard campus policies and procedures, including specific required procedures for reporting absences and requests for leave. *See id.* at p. 3; *see also Exhibit A–3 to Motion for Summary Judgment; Charlton–Pollard 2012–2015 Procedures Manual.* During their August 30, 2013, meeting, Principal Wells concluded that Thomas failed to provide an excusable reason for his non-compliance and documented his concerns and directives in a Letter of Reprimand. *See Wells Affidavit,* at p. 4, *see also Letter of Reprimand, Exhibit A–4 to Motion for Summary Judgment,* pp. 117–118. Thomas refused to sign the letter and did not provide a response. *Id.* Thomas then proceeded to be absent from school for the next six days, returning September 11, 2013. *See Wells Affidavit,* at p. 4. During this time period he again failed to follow policy by not informing administration about his absences and failing to arrange for a substitute. *Id.* Once Thomas returned, Principal Wells asked Thomas to meet with him, to which Thomas responded by again walking off the job. *Id.* Thomas then did not show up for work on the next two days, again failing to notify administration or arrange for a substitute. *Id.* Wells prepared a memorandum summarizing his concerns about Thomas. *Id. See also September 16, 2013, Memorandum; Exhibit A–4,* p. 119. Thomas again

refused to sign and date the memorandum to acknowledge his receipt. .*See id.*

The evidence shows that this type of noncompliant behavior continued for the rest of the school year. To summarize, Thomas exhibited tardiness and/or numerous absences on the dates of September 17, September 18, and September 19 though October 11, 2013. *See Wells Affidavit and Exhibit A–6 to Motion for Summary Judgment.* Parents continued to complain about Thomas. *See Wells Affidavit, at pp. 4–5; Exhibit A–4 at p. 120.* Thomas failed to enter a single grade for any of his students in the fall 2013 semester and his students did not receive progress reports, all in violation of school policy. *Id. See also Exhibit A–3, at p. 100.* Principal Wells conducted a walkthrough of Thomas' classroom on October 23, 2013, and completed an "Observation Appraisal" as required by law. *See Wells Affidavit, at p. 5, see also Evaluation, Exhibit A–4 to Motion for Summary Judgment, at pp. 124–130.* Principal Wells concluded that Thomas needed to be placed on "Teacher in Need of Assistance" ("TINA") "plan as required by law when a teacher fails to meet certain expectations." *See id.* Wells again attempted to meet with Tomas to go over the evaluation, but Thomas became resistant and stated that he would move ahead with a grievance. *See Wells Affidavit, at p. 5.* Wells informed Thomas of his right to have another appraiser conduct the evaluation, but Thomas refused. *Id.* Wells therefore prepared a memorandum to Executive Director of Human Resources, Sybil Comeaux, documenting the October 23, 2013, meeting with Thomas. *See Exhibit A–4, at p. 131.*

Principal Wells also discovered that Thomas was using his cell phone to conduct personal conversations during duty hours. He left his students unattended to use his cell phone on October 24, 2013, during which time two of the students were injured. *See Wells Affidavit, at pp. 5–6.* Wells documented this incident in a memorandum. *See Exhibit A–4, at p. 123.*

Thomas also again refused to meet with Thomas to go over the TINA plan on two occasions in November 2013. *See Wells Affidavit, at p. 6.* On November 19, 2013, Thomas' insubordination to Principal Wells resulted in an incident in the school cafeteria during which Thomas yelled in front of the students and began a disturbance. *Id.* This resulted in the intervention of BISD police, and Thomas left the campus that day. *Id.* He was then absent until December 4, 2013. *Id.* On that date, the second graders were scheduled for a field trip to the planetarium. *Id.* Thomas came to school but upon receiving a cell phone call, he exited the bus being loaded for the field trip and departed school without notifying administration. *Id.* Later that day, Thomas called to say he would return for the staff meeting, but he failed to show. *Id.* Thomas then was absent from December 5, 2013, through the end of the school year on June 6, 2014. *Id. See also Exhibit A–6 to Motion for Summary Judgment.* Wells prepared another letter of reprimand reflecting the field trip incident as well as documenting Thomas' complete failure to prepare lesson plans and turn in grades. *See Exhibit A–4, pp. 136–137.* Ultimately, Wells completed the BISD form recommending that Thomas' term contract not be renewed. *See Exhibit A–4, at p. 141.*

In the interim, Thomas filed grievances against Wells. *See Exhibit A–2 to Motion for Summary Judgment, pp. 45–46; 60–61; and 74–75.* Thomas also filed a request for assault leave after the November 19, 2013, disturbance involving BISD. *See Exhibit A–4, at p. 140; and Affidavit of Sybil Comeaux, Exhibit D to Motion for Summary Judgment, at p 4.* BISD's investigation determined that he had not been assaulted after Thomas admitted as much

during the investigation. *See Exhibit A–4, atp. 140 and Comeaux Affidavit,* at p. 4. Rather than charge Thomas for the days he missed while on assault leave, BISD opted to pay him for the days he missed while the investigation was pending but clearly instructed him that he as no longer eligible for assault leave as of January 9, 2014, and directed him to return to work. *See BISD Correspondence to Thomas, Exhibit A–4,* at p. 140. In December 2013, Thomas was also offered a position at another elementary school campus with a new supervisor. *See Wells Affidavit,* at p. 7. Thomas turned down this offer. *See Comeaux Affidavit,* at p. 3.

E. Prior Related Lawsuit

As referenced above, on August 17, 2007, while employed with BISD, Thomas filed a lawsuit here in the Eastern District of Texas against BISD and several board members, BISD employees, his former attorney, and BISD legal counsel. *See Thomas v. Norris,* 1:07–CV–573. In that suit, he alleged violations of the Whistleblower Protection Act of 1989 ("WPA"), Title VII, the ADA, and Constitutional claims under the First Amendment and the Due Process Clause of the Fourteenth Amendment. *See Thomas v. Norris,* No. 1:07–CV–573, 2009 WL 3856920, at \*1–\*2, 2009 U.S. Dist. LEXIS 107447, at \*3–\*4 (E.D.Tex. Nov. 16, 2009) (Hines, J.). Judge Hines ultimately dismissed all of Thomas' claims and granted summary judgment in favor of the defendants. *Id.* at \*17, 2009 U.S. Dist. LEXIS 107447 at \*55. The Court specifically held that the WPA claims failed because Thomas failed to exhaust his administrative remedies and because Thomas was not a federal employee and thus lacked standing under the WPA. *Id.* at \*7–\*8, 2009 U.S. Dist. LEXIS 107447 at \*21–\*22. Judge Hines further concluded that Thomas could not prevail on his Title VII hostile work environment and retaliation claims because he failed to

exhaust his administrative remedies and obtain a "right to sue letter" from the EEOC. *Id.* at \*10, 2009 U.S. Dist. LEXIS 107447 at \*30. The Court alternatively found that Thomas could not establish a prima facie hostile work environment claim because there was no evidence that any wrongful conduct on the part of defendants was pervasive or severe enough to alter the conditions of employment. *Id.* at \*10, 2009 U.S. Dist. LEXIS 107447 at \*33. Similarly, Judge Hines concluded that Thomas failed to establish the first element of his Title VII retaliation claim because he did not demonstrate that he had an objectively reasonable belief that his supervisor's conduct constituted an unlawful employment practice, *i.e.,* that it was motivated by his race, color, gender, religion or national origin. *Id.* at \*10, 2009 U.S. Dist. LEXIS 107447 at \*35. Judge Hines relatedly dismissed Thomas' ADA claims for failure to exhaust administrative remedies. *Id.* at \*17, 2009 U.S. Dist. LEXIS 107447 at \*54.

As for the constitutional claims, Judge Hines held that Thomas had no protected property interest in his work assignment as assistant principal or in continued employment after his certification lapsed. *Id.* at \*12–\*13, 2009 U.S. Dist. LEXIS 107447 at \*41–\*43. Furthermore, the Court found that the process afforded to Thomas was adequate under the Due Process clause because he was aware of his right to file a grievance but he chose not to do so. *Id.* at \*13–14, 2009 U.S. Dist. LEXIS 107447 at \*44. Judge Hines also concluded that Thomas' allegations that his First Amendment rights were violated failed because he was unable to raise of genuine issue of material fact as to whether his speech motivated BISD or any other defendant regarding his employment. *Id.* at \*16, 2009 U.S. Dist. LEXIS 107447 at \*51–\*52.

## II. Discussion

### A. Summary Judgment Standard of Review

Here, the defendant filed a motion to dismiss on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), as well as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because the Court will consider evidence attached to the motion and therefore looks outside of the pleadings as part of its analysis, *supra,* it is appropriate to convert the motion to dismiss into a motion for summary judgment. *See* Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion"). Accordingly, the summary judgment standard of review is applicable for purposes of this order.

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). This rule places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)); *Stults v. Conoco, Inc.,* 76 F.3d 651, 655–56 (5th Cir.1996) (citations omitted). An issue is *genuine* if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is *material* when it is relevant or necessary to the ultimate conclu-

sion of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The movant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.); (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

Once the moving party has carried its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the nonmovant may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial. *Webb v. Cardiothoracic Surgery Assocs. of North Texas, P.A.,* 139 F.3d 532, 536 (5th Cir. 1998). The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted).

When a moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak.*, 953 F.2d at 915–16 & n. 7. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

B. *Res Judicata*

As discussed above, prior to filing the instant suit in September 2013, Mr. Thomas previously filed suit against BISD in 2007 in which he asserted many of the same causes of actions stated herein, including claims under Title VII, the ADA, and various alleged constitutional violations. *See Thomas v. Norris*, No. 1:07–CV–573, 2009 WL 3856920, at *1, 2009 U.S. Dist. LEXIS 107447, at *3 (E.D.Tex. Nov. 16, 2009) (Hines, J.). Thomas' claims were based on many of the same factual instances re-alleged herein. Defendant relatedly contends that the plaintiff's allegations occurring more than two years prior to the filing of this suit in September 2013 are barred by limitations.

Thomas' charges of discrimination filed with the EEOC show that he alleges discrimination beginning as early March 8, 2007. *See Exhibit C to Defendant's Motion to Dismiss and for Summary Judgment* (doc. # 43–4). In his EEOC charge, Thomas also references the prior federal suit and his employment with BISD beginning in August 2008. The Court notes that Thomas' amended pleading and briefs filed in response to the motion for summary judgment only reference facts and occurrences arising during the 2012–2013 and 2013–2014 school year. The undersigned therefore concludes that the plaintiff has abandoned any claims which arise from conduct at issue in his prior lawsuit.

However, as argued by the defendant, to the extent that Thomas' claims can be interpreted in any way as encompassing his employment history and allegations already addressed by Judge Hines in the 2007 suit, the Court agrees that those claims are barred by *res judicata* in the instant suit. There are two related doctrines of preclusion: (1) claim preclusion, referred to as *res judicata*, and (2) issue preclusion, known as collateral estoppel. *See Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Id.*

Under federal law, *res judicata* bars relitigation of an issue if four conditions are met: (1) the parties in the later action are identical to the parties in the prior action, (2) judgment in the prior action was rendered by a court of competent jurisdiction, (3) the prior action concluded with a final judgment on the merits, and (4) the same claim or cause of action was involved in both suits. *Miller v. Nationwide Life Ins. Co.*, No. 06–31178, 2008 WL 3086783, *3–4, 2008 U.S.App. LEXIS 16922, *11–12 (5th Cir. Aug. 6, 2008) (citing *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir.1994)). If these conditions are satisfied, a plaintiff is prohibited " 'from raising any claim ... in the later

action that was or could have been raised in support of ... the cause of action asserted in the prior action.'" *Id.* Quoting *Shanbaum,* at 310.

These elements are satisfied in this case. As in the prior lawsuit, here, Thomas is asserting causes of action for Title VII discrimination and retaliation, ADA claims, and constitutional causes of action based on the First Amendment and Due Process. Both cases involve Thomas asserting causes of action against his employer, BISD. Judge Hines fully adjudicated Thomas' causes of action and entered judgment in BISD's favor, as discussed above. Accordingly, to the extent that Thomas' claims can be interpreted as reasserting the same allegations made the basis of the 2007 lawsuit, the Court finds that they are indeed barred by *res judicata.* In his responsive filings, Thomas does not offer any argument supporting otherwise.

### C. Failure to Exhaust Administrative Remedies

As discussed in defendant's motion, the instant suit is based on Thomas' EEOC Charge No. 460–2013–02322, attached to defendant's motion as Exhibit C. A reading of that charge document shows that plaintiff s claims with the EEOC allege discrimination and alleged retaliation for the prior lawsuit filed in Judge Hines' court. *See EEOC Charge, Exhibit C–1 to Motion for Summary Judgment,* at p. 173. There is no mention of the litany of claims asserted in Thomas' amended complaint in this EEOC charge.

 A precondition to filing a Title VII suit in federal court is the exhaustion of administrative remedies. *See Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378–79 (5th Cir.2002) (citing *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788–89 (5th Cir.1996)). Before instituting suit, aggrieved employees must first make a timely charge of discrimination with the EEOC

and secure a "right-tosue" letter from the EEOC. *Taylor,* at 378–79. It is well-settled that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies. *See Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.,* 40 F.3d 698, 711 (5th Cir.1994). A Title VII suit may "extend as far as, but not further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Simmons–Myers v. Ceasars Entertainment Corp.,* 515 Fed.Appx. 269, 272 (5th Cir.2013) (per curiam) (citing *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 578 (5th Cir.1993)) (quoting *Terrell v. U.S. Pipe & Foundry Co.,* 644 F.2d 1112, 1123 (5th Cir. Unit B 1981)). However, "a charging party's rights should [not] be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations." *Id.* Quoting *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 462 (5th Cir.1970). Instead, the proper question is whether the charge has stated sufficient facts to trigger an EEOC investigation, and to put an employer on notice of the existence and nature of the charges against him. *See id.* at 272–73 (citing *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 878 (5th Cir.2003)).

Here, Thomas' EEOC charge is limited to Title VII retaliation. *See Exhibit C–1, Notice of Charge of Discrimination* (doc. # 43–4). He claims that he has been subjected to different terms and conditions of employment since filing the first lawsuit in 2007. However, his pleadings far exceed this charge. *See First Amended Complaint,* at pp. 2–3.

 Additionally, as pointed out in the defendant's motion, there is no evidence that Thomas invoked judicial review or exhausted his administrative remedies regarding the proposed nonrenewal of his

contract with BISD. Even if his pleadings could be construed to assert a claim based on the nonrenewal, he must first exhaust administrative remedies before filing suit on the nonrenewal issue. Generally, Texas law requires an aggrieved party to exhaust all remedies provided under the applicable administrative scheme if the party's claim: (1) concerns the administration of school laws; and (2) involves questions of fact. *Nairn v. Killeen Independent Sch. Dist.*, 366 S.W.3d 229, 241 (Tex.App.–El Paso 2012, no pet.) (citing *Mission Indep. Sch. Dist. v. Diserens*, 144 Tex. 107, 188 S.W.2d 568, 570 (Tex.1945); *Ysleta Indep. Sch. Dist. v. Griego*, 170 S.W.3d 792, 795 (Tex. App.–El Paso 2005, pet. denied)). In addition, the Term Contract Nonrenewal Act, which is found in Chapter 21 of the Education Code, provides an administrative procedure by which a school teacher, who is employed under a term contract, may seek judicial review of a district's decision not to renew the contract. *Id.* (Citing *Griego*, 170 S.W.3d at 794 and *Gutierrez v. Laredo Indep. Sch. Dist.*, 139 S.W.3d 363, 366–67 (Tex.App.–San Antonio 2004, no pet.)). The Act requires a teacher who is aggrieved by the nonrenewal of a term contract to exhaust administrative remedies before seeking redress in the courts. *Id.* Citing TEX. EDUC.CODE ANN. § 21.209 (West 2006) and *Brown v. Amarillo Indep. School Dist.*, 190 S.W.3d 7, 10 (Tex.App.– Amarillo 2005, no pet.). An employee who alleges that a school district wrongfully terminated an employment contract must apply to the school authorities for relief before filing suit in the district court. *Id.* When a teacher asserts a claim based on nonrenewal of a term contract, the last step in the administrative process is an appeal to the Commissioner of Education. *Id.* Citing TEX. EDUC.CODE ANN. § 21.209 (providing that "[a] teacher who is aggrieved by a decision of a board of trustees on the nonrenewal of the teacher's term contract may appeal to the commissioner

for a review of the decision of the board of trustees. . . ."). Similarly, a person must pursue her claim with the Commissioner of Education before filing suit when the claim involves actions or decisions by the school board that allegedly violate either state school laws or a provision of a written employment contract between a school district and an employee if the violation would cause the employee to suffer monetary harm. *Id.* Citing TEX. EDUC. CODE ANN. (West Supp. 2011). Only when an appeal to the Commissioner of Education has been exhausted will a district court have jurisdiction to hear a school district employee's breach of contract claim premised on contract nonrenewal or the grounds specified in Section 7.057(a). *Id.* at 242. Citing TEX. EDUC.CODE ANN. § 21.307; *Griego*, 170 S.W.3d at 795; *Dotson v. Grand Prairie Indep. School Dist.*, 161 S.W.3d 289, 291 (Tex.App.–Dallas 2005, no pet.).

There is no indication that the plaintiff has invoked any of the administrative remedies discussed above as required by Texas law before filing suit. In fact, the Court has not received any evidence that the nonrenewal of Thomas' contract has been finalized. In any event, even assuming that the nonrenewal proposal has been finalized by BISD, Thomas has not responded to the motion for summary judgment with evidence exhibiting that he sought relief with the Texas Commissioner of Education as outlined by the Texas Education Code. The law is clear in requiring that this condition be met before a teacher asserts any claims based on a contract nonrenewal. Having been presented no evidence indicating as such, the undersigned must conclude that Thomas has not exhausted his administrative remedies as required. The Court therefore finds that it does not have jurisdiction to address Thomas' causes of action based on the

nonrenewal of his contract and possible termination.

### D. Title VII Discrimination Claim

*Hostile Work Environment*

 Title VII prohibits discrimination by employers "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.§ 2000e–2(a). In his amended complaint, the plaintiff contends that BISD discriminated against him in violation of Title VII and the ADA "and created a hostile work environment." *See Amended Complaint,* at p. 2. "The creation of a hostile work environment through harassment ... is a form of proscribed discrimination." *Equal Employment Opportunity Comm. v. Boh Bros. Constr. Co., LLC,* 731 F.3d 444, 452 (5th Cir.2013) (quoting *Vance v. Ball State Univ.,* —— U.S. ——, 133 S.Ct. 2434, 2455, 186 L.Ed.2d 565 (2013) (Thomas, J., concurring)).

 The plaintiff must establish the following elements of a hostile working environment claim: (1) that he belongs to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on the protected status; (4) that the harassment affected a term, condition, or privilege of employment, and (5) the employer knew (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See Hernandez v. Yellow Transp., Inc.,* 670 F.3d 644, 651 (5th Cir. 2012); *see also Boh Bros.,* 731 F.3d at 453 (citing *Lauderdale v. Tex. Dep't of Criminal Justice,* 512 F.3d 157, 162–63 (5th Cir. 2007)); *Septimus,* 399 F.3d at 611 (internal citations omitted). To affect a term, condition, or privilege of employment, the harassing conduct "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Boh Bros.,* at 453 (quoting *Aryain v. Wal–Mart Stores of Tex., LP,* 534 F.3d 473, 479 (5th Cir.2008) (alteration in original) (quoting *Lauderdale,* 512 F.3d at 163)). To be actionable, the alleged harassment must have created an environment that a reasonable person would find hostile or abusive. *Septimus v. Univ. of Houston,* 399 F.3d 601, 611 (5th Cir.2005); *see also Boh Bros,* at 454 ("[w]e use an objective 'reasonable person' standard to evaluate severity and pervasiveness.") (citing *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Septimus,* at 611; *see also Boh Bros.,* at 454 ("[u]ltimately, whether an environment is hostile or abusive depends on the totality of circumstances.")

 Here, the plaintiffs complaint fails to allege circumstances which would qualify as a hostile work environment under Title VII. He appears to contend that BISD created a hostile work environment by calling his wife at her place of employment, creating an intimidating environment, and calling the BISD police (presumably referencing the incident in the cafeteria). *See Amended Complaint,* at p. 3. He does not offer evidence indicating that any of the allegedly harassing incidents occurred because of his protected status. In fact, he does not reference race, sex, or national origin as a basis for the harassment anywhere in his complaint or in his responses to the motion for summary judgment. Conclusory allegations are insufficient to establish a prima facie

claim for hostile work environment. *Hill v. Cleco Corp.*, 541 Fed.Appx. 343, 346 (5th Cir.2013)(per curiam) (citing *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002)). Furthermore, even viewing these isolated incidents in the most favorable light to the plaintiff, they do not rise to the necessary level of severity and pervasiveness to create a hostile work environment. Complaints of isolated incidents—unless extremely serious—will not amount to discriminatory charges that can survive summary judgment. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir.2007). "Title VII ... is not a 'general civility code.'" *Lauderdale*, 512 F.3d at 163. A review of the filings and plaintiff's pleading show that the summary judgment record is devoid of evidence establishing that the few incidents of which Thomas complains were motivated by any protected status and/or that they affected a term of his employment. The Court therefore concludes that the plaintiff has failed to create a genuine issue of material fact on any essential element of his Title VII hostile work environment claim. BISD is entitled to summary judgment on this cause of action.

*Legitimate, Nondiscriminatory Reasons*

To take the analysis a step further, even assuming *arguendo* that Thomas created an issue of material fact on his prima facie hostile work environment case, the defendant still prevails on summary judgment as it has proffered a legitimate nondiscriminatory reason for any alleged employment action against Thomas, as discussed in further detail, *infra*.[3] The plaintiff's own personal statements and unsubstantiated opinions about his treatment by BISD are insufficient to survive summary judgment. *See Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (conclusory allegations and unsubstantiated assertions are insufficient to overcome summary judgment); *see also Sabiyu v. Univ. of Tex. Southwestern Med. Ctr.*, No. 3:09–CV–1244–B, 2010 U.S. Dist. LEXIS 123525, at *8 (N.D.Tex. Nov. 22, 2010) (plaintiff's subjective view and personal opinion insufficient to create fact issue on pretext). The defendant's motion for summary judgment is therefore meritorious on the hostile work environment claim.

E. Title VII Retaliation Claim

██ Title VII prohibits retaliation against an employee who has engaged in activity protected by the Act: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."42 U.S.C. § 2000e–3. The term "discriminate against" refers to distinctions or differences in treatment that injure protected individuals. *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2410, 165 L.Ed.2d 345 (2006).

██ To establish a claim for retaliation under Title VII, a plaintiff must demonstrate that (1) he engaged in a protected activity, (2) the employer took an adverse

---

**3.** *See Johnson v. Merrell Dow Pharms., Inc.*, 965 F.2d 31, 35 (5th Cir.1992) (stating that the employer must maintain the ability to "supervise, review, criticize, demote, transfer, and discipline employees"); *see also Baptiste v. Specialty Products & Insulation*, No. H–04–3044, 2005 WL 3359419 at *4, 2005 U.S. Dist. LEXIS 40369 at *10 (S.D.Tex. Dec. 9, 2005) (citing *Johnson* in support of statement that "[t]he court has no basis for second-guessing this business decision terminating Plaintiff for failing to comply with the directions of his supervisor.")

employment action against her, and (3) there was a causal connection between the protected activity and the adverse action. *See Burlington Northern*, 126 S.Ct. at 2414; *Mato v. Baldauf*, 267 F.3d 444, 450 (5th Cir.2001), *cert denied*, 536 U.S. 922, 122 S.Ct. 2587, 153 L.Ed.2d 777 (2002); *Mota v. Univ. of Tex. Houston Health Science Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). An employee has engaged in protected activity when he has (1) opposed any practice made an unlawful employment practice by Title VII ("the opposition clause"), or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII ("the participation clause"). *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372–73 (5th Cir.1998), *cert. denied*, 525 U.S. 1068, 119 S.Ct. 798, 142 L.Ed.2d 660 (1999) (quoting 42 U.S.C. § 2000e–3(a)); *accord Clark County Sch. Dist v. Breeden*, 532 U.S. 268, 269, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001); *Baker v. American Airlines, Inc.*, 430 F.3d 750, 755 (5th Cir. 2005); *Grimes v. Texas Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 140 (5th Cir.1996).

The Fifth Circuit has held that, like discrimination claims, "the familiar *McDonnell Douglas* burden-shifting framework applies in Title VII retaliation case." *Mato*, 267 F.3d at 452 (citing *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001); *Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 401–02 (5th Cir.2000)); *see also Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332–33 (5th Cir.2005); *Septimus*, 399 F.3d at 607–608; *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir.2001) *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir.2001). In general, that analysis follows in three parts: (1) the employee-plaintiff must make a prima facie case of unlawful retaliation or race/color discrimination, (2) the burden of production shifts to the employ-

er-defendant, who must articulate a legitimate, non-discriminatory reason for the challenged action, and (3) if it does, the plaintiff can show that the defendant's stated reason is pretextual. *See Haire v. Bd of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362–63 (5th Cir.2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *see also Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir.2007) (citation omitted); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir.2004). Throughout, the ultimate burden of persuasion remains with the plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In *Burlington Northern*, the Supreme Court clarified that for purposes of Title VII, an "adverse employment action" is defined differently in the retaliation context than it is in the discrimination context. *Id.*, 548 U.S. at 68, 126 S.Ct. 2405. In the retaliation context, it is an action that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal quotations omitted).

To the extent that he alleges he was retaliated against for filing the lawsuit in 2007, that claim is time-barred. *See* 42 U.S.C. § 2000e–5(e). As for filing 2013 EEOC charge, this would satisfy the protected activity element. However, the defendant has submitted summary judgment evidence showing that his supervisor, Principal Wells, was unaware that Thomas had filed the charge or the instant lawsuit until late 2013. Further, the plaintiff's complaint and filings are unclear is explaining what adverse employment action he suffered in relation to the filing of the EEOC complaint or this lawsuit. The record is

clear that BISD has recommended nonrenewal of his teaching contract. Viewing the evidence in the most favorable light, this could constitute an adverse employment action against Thomas.

However, even assuming that plaintiff can create an issue of fact on his prima facie retaliation claim, BISD can still show that it recommended nonrenewal based on a legitimate business decision. The record is also replete with evidence of legitimate, nondiscriminatory reasons for the recommended nonrenewal of Thomas' contract. BISD has provided undisputed evidence that (1) Thomas was absent for extensive periods of time; (2) that he did not follow proper procedure in reporting these absences or requesting a substitute teacher to cover in his absence; (3) he refused to attend meetings at the request of his supervisor, Principal Wells, or sign memorandums evidencing his conferences with Wells; (4) he violated school policy with his cell phone usage; (5) he left his class unattended and failed to submit grades and progress reports as required; and (6) several parents complained about his performance and attitude. In fact, BISD made numerous attempts. to help Thomas in his teaching position by offering him resources, training, a TINA plan, and even offering a transfer to another campus for a fresh start under a new principal. Thomas declined all of these options. The defendant has clearly carried its burden in offering a legitimate, non-retaliatory basis for its adverse action against Thomas and Thomas has not offered any evidence to rebut these reasons as pretextual. The plaintiff's retaliation claim, therefore, fails as a matter of law.

### F. ADA Claims

In his complaint, the plaintiff asserts that BISD also discriminated and retaliated against him in violation of the Americans with Disabilities Act of 1990. *See*

*Amended Complaint,* at p. 1. The defendant contends that it is entitled to summary judgment because plaintiff s pleading fails to state facts to support an ADA claim and because there is no evidence indicating a causal nexus between any of BISD's acts and plaintiff's alleged disability. *See Motion,* at p. 33. Defendant also argues that Thomas cannot show that he was replaced or treated less favorably than a non-disabled employee. *Id.*

First, the Court finds that the defendant has shown that Thomas failed to exhaust his administrative remedies. Under the ADA "[n]o action ... shall be brought ... if administrative remedies have not been exhausted." 42 U.S.C. § 6104(e)(2). Nowhere, in his EEOC charge does Thomas allege that his employer violated the ADA. *See Exhibit C to Motion for Summary Judgment.* As discussed above in reference to the other claims, for an ADA claim, the exhaustion of administrative remedies is a prerequisite to filing suit.

Even if Thomas properly exhausted his administrative remedies under the ADA, this claim still fails as a matter of law because he has not presented evidence sufficiently creating a genuine issue of material fact on this cause of action. Based on the few facts alleged by the plaintiff in his complaint, to the extent that he is asserting that the defendants violated the ADA, the Court construes this claim as one for disability discrimination. To establish a *prima facie* case for disability discrimination under the ADA, a plaintiff must establish the following: (1) he suffers from a disability; (2) he is qualified for the job despite the disability; (3) he was subjected to an adverse employment action due to the disability; and (4) he was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *McInnis v. Alamo Cmty. Coll.*

*Dist.,* 207 F.3d 276, 279–80 (5th Cir.2000); *see also Fajardo–Espinosa v. Parkland Hosp.,* No. 3:09–CV–540, 2010 WL 1267260 at \*2–3, 2010 U.S. Dist. LEXIS 40663 at \*6 (N.D.Tex. March 16, 2010) (citing *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995)). To have a qualifying disability, a plaintiff must demonstrate "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Hale v. King,* 642 F.3d 492, 499–500 (5th Cir.2011).

In his responsive briefs, plaintiff references an expert witness, Dr. Ramaswamy Lakshmanan, M.D., but he does not specify what type of disability is at issue to which Dr. Lakshmanan can testify. *See Plaintiff Response* (doc. # 45), at p. 5. According to the defendant's motion, the plaintiff has filed documents referencing Post–Traumatic Stress Disorder. *See Motion,* at p. 35. The plaintiff does not point to where these documents are in the record in his response. The undersigned is not required to sift through the record to identify this evidence. *See Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). Thomas bears the burden of specifically identifying that evidence and explaining how it creates an issue of genuine material fact as to his disabled status. *See id.* He has not done so, much less pointed to objective, substantiated evidence which shows that his disability is severe enough to affect or limit a major life activity.

Even if the Court construes the evidence in the most favorable light and assumes, *arguendo,* that Thomas is in fact "disabled" under the ADA, he has not pointed to evidence attesting to the essential functions of his job and whether he specifically requested accommodations from BISD related to those functions of his teaching position. The defendant submitted verified evidence indicating that Thomas did not report his disability to his supervisor or request accommodations based on his alleged disability. *See Wells Affidavit,* at p. 7. Even if he did, the evidence shows that Thomas was given many opportunities and offers of aid purposed to help him succeed in the classroom. *Id.* Thomas has failed to submit evidence creating a fact issue as to whether he is a qualified individual[4] for purposes of proving a *prima facie* case of disability discrimination. His own unsworn and subjective beliefs as written in his responsive documents are not competent summary judgment evidence. Finally, even if Thomas' contract was not renewed, he has not provided evidence establishing a causal nexus between his alleged disability and this employment action or indicating that he was replaced by a non-disabled person or treated less favorably than other non-disabled employees. The defendant has accordingly shown that the plaintiff

---

**4.** A qualified individual is an individual who can perform the essential functions of the job with or without reasonable accommodations. *Munoz v. Echosphere, L.L.C.,* No. 09–CV0308–KC, 2010 WL 2838356 at \*12–13, 2010 U.S. Dist. LEXIS 71913 at \*38 (W.D.Tex. July 15, 2010) (citing *Turco v. Hoechst Celanese Chem. Group,* 101 F.3d 1090, 1092 (5th Cir.1996)). As several courts have recognized, an essential element of any job is an ability to appear for work. *Id.* Internal citations omitted. In *Munoz,* the Court held that a plaintiff had failed to show that she was a qualified individual for purposes of her disability discrimination claim because she failed to show that she asked for accommodations or a change to her position and that she was not capable of performing the essential functions of her job. *Id.* at \*13, 2010 U.S. Dist. LEXIS 71913 at \*39.

cannot prove at least two elements of an ADA discrimination claim and he has not submitted competent summary judgment creating a fact issue on any essential element of his ADA discrimination claim. For these reasons, combined with the failure to exhaust administrative remedies, the Court finds that BISD is entitled to summary judgment on the plaintiff's ADA claim.

### G. Weingarten Claim

In *Weingarten,* the Supreme Court held that the National Labor Relations Act "guarantees an employee's right to the presence of a union representative at an investigatory interview in which the risk of discipline reasonably inheres." *Nat'l Labor Relations Bd. v. J. Weingarten, Inc.,* 420 U.S. 251, 262, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). *Weingarten,* however, is not violated merely because an employer made a disciplinary decision before, during, or shortly after an employee interview. *Williams v. AT & T, Inc.,* 356 Fed.Appx. 761, 767 (5th Cir.2009) (per curiam). However, the Texas Supreme Court has specifically held that public-sector employees do not possess *Weingarten* representation rights. *See City of Round Rock v. Rodriguez,* 399 S.W.3d 130, 143 (Tex.2013). "There is no question that Section 7 of the NLRA and the *Weingarten* decision apply only to private-sector employees." *Id.* Citing 29 U.S.C. § 152(2). As a Texas teacher, Thomas is undisputedly a public-sector state employee. He is accordingly precluded from asserting a *Weingarten* claim by law and this cause of action must be dismissed.

### H. Constitutional Claims

Thomas contends that BISD violated his First Amendment rights and his rights to due process. There is no specific statement in the plaintiff's amended complaint explaining how he alleges his First Amendment claims were violated. *See*

*Amended Complaint* (doc. # 38). As for the due process allegations, Thomas alleges that his Fourth Amendment rights against unreasonable search and seizure were violated during the incident involving Principal Wells and the BISD police walking him off campus. He also contends that his Fifth and Fourteenth Amendment rights were violated because Superintendent Chargois ignored his grievances; a conflict of interest existed involving Dr. Shirley Bonton, and school board member Terry Williams voted against him after treating Thomas with violence and coming to his work to intimidate him. *Id.*

As Judge Hines explained in Thomas' previous suit, to state a claim for retaliation under the First Amendment, the plaintiff must prove that (1) he suffered an adverse employment action, (2) his speech involved a matter of public concern, (3) his interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency, and (4) his speech was a substantial or motivating factor behind the defendant's actions. *See Thomas v. Norris,* 2009 U.S. Dist. LEXIS 107447, at *49–*50 (citing *James v. Texas Collin County,* 535 F.3d 365, 375–76 (5th Cir.2008) and *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). Whether an employee's speech addresses a matter of public concern turns on whether the affected individual speaks "primarily as a citizen rather than as an employee." *Id.* Quoting *Dorsett v. Board of Trustees of State Colleges & Universities,* 940 F.2d 121, 124 (5th Cir.1991).

Thomas does not point to what speech is at issue in his First Amendment claim. Even so, here, as in the 2007 case, any speech at issue arose from the disagreements between Thomas and his employer. *See id.* at *50. There is no indication that any of Thomas' complaints about

BISD and its staff went beyond the internal disagreement between himself as an employee and BISD as his employer. He has not offered competent summary judgment creating a fact issue on whether his speech was on a matter of broad public concern and thus protected by the First Amendment. BISD is therefore entitled to summary judgment on this constitutional claim.

As for the due process issues, Thomas first alleges that BISD violated his Fourth Amendment rights against unreasonable search and seizure during the incident involving school district police "walking off" Thomas from campus after the verbal exchange with Principal Wells in the cafeteria. Under the Fourth Amendment, the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. Here, the plaintiff has not pled a procedural or statutory vehicle for asserting this constitutional cause of action. He also has not alleged facts or presented evidence establishing municipal liability against BISD under the Fourth Amendment under the proper statutory vehicle. This would require a showing that (1) a policy (2) of BISD's policymaker (3) caused (4) the plaintiff to be subjected to a deprivation of constitutional right. *See Grandstaff v. City of Borger, Tex.,* 767 F.2d 161, 169 (5th Cir. 1985). The plaintiff's pleading and unsubstantiated, subjective allegations regarding the incident at issue fall far short of these requirements necessary for establishing liability against BISD on the Fourth Amendment claim. A municipality cannot be held liable for the actions of his non-policy making employees under a respondeat superior theory of liability. *See Williams v. Kaufman County,* 352 F.3d 994, 1013 (5th Cir.2003). Despite his own personal problems and opinions regarding Principal Wells and the involvement of

BISD police, the plaintiff has wholly failed to properly plead or create a fact issue sufficient to survive summary judgment on this claim. Finally, even viewing the plaintiff's allegations and evidence in the most favorable light to Thomas, the summary judgment evidence establishes that Wells and BISD acted objectively reasonable under the circumstances. Wells' affidavit states that Thomas—not a small man—became agitated and loud in the school cafeteria in the presence of other students. The decision to involve law enforcement is not unreasonable in light of the special characteristics of the school environment in which schools have a custodial and tutelary responsibility for the children. *See Couture v. Board of Educ. of the Albuquerque Public Schools,* 535 F.3d 1243, 1250 (10th Cir.2008) (citing *Hazelwood School Dist. v. Kuhlmeier,* 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) and *Board of Educ. of Indep. Schools of Pottawatomie County v. Earls,* 536 U.S. 822, 829–30, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002)). For these reasons, the Court concludes that BISD has carried its burden in establishing that it is entitled to summary judgment on any Fourth Amendment search and seizure claim asserted by Thomas, and the plaintiff has failed to properly plead or offer competent summary judgment indicating otherwise.

As for the remainder of Thomas' constitutional allegations, he has again failed to plead the proper statutory vehicle for alleging the due process claims under the Fifth and Fourteenth Amendments. Furthermore, the deprivation of a constitutionally-protected life, liberty or property interest is actionable only if the deprivation is without due process of the law. *See Thomas v. Norris,* 2009 U.S. Dist. LEXIS 107447, at *36 (citing *Zinermon v. Burch,* 494 U.S. 113, 124–26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)). The analysis begins

with an inquiry into whether challenged conduct affect a life, liberty or property interest protected by the Constitution. *Id.* Citing *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If so, the second step is to determine whether the level of process afforded to the plaintiff was deficient. *Id.*

 Here, the plaintiff has not explained what constitutionally-protected interest he is alleging has been violated under the Fifth and Fourteenth Amendments. As Judge Hines explained, Thomas has no protected property interest in non-economic benefits of his employment. *See id.* at *40. The plaintiff fails to submit competent summary judgment evidence establishing that he was deprived of a protected property or liberty interest. Secondly, BISD has offered ample evidence establishing that he process afforded to Thomas was adequate and that Thomas in fact participated in this process and availed himself of the grievance process and was aware of his rights to do so. *See Motion,* at pp. 30–32, *and Referenced Exhibits.* The evidence shows that he received notice and an opportunity to be heard, which culminated at the February 20, 2014, public school board hearing. *See id. See also Thomas v. Norris,* at *45 (citing *Cleveland v. Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 & 544–46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("[t]he root requirement of procedural due process is that an individual be given *notice* and an *opportunity to be heard* before being deprived of a property or liberty interest.") (emphasis in original)). BISD is accordingly entitled to summary judgment on the plaintiffs due process claims.

### III. Conclusion and Order of the Court

Based upon the findings and legal conclusions stated herein, the undersigned United States Magistrate Judge concludes that the defendant has established that no genuine issue of material fact exists on any essential element of the numerous causes of action asserted by the plaintiff and that it is entitled to the dismissal of the plaintiff's claims in their entirety as a matter of law. Accordingly, based upon these specific findings, the Court **ORDERS** that defendant BISD's case-dispositive motion (doc. # 43) is **GRANTED** in its entirety on summary judgment grounds. The plaintiff's claims are dismissed in their entirety and the Court will issue enter judgment in favor of the defendant in a separate order.